IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

Case No. 9:24-cv-80713-RLR

| | |
|---|---|
| SCOTT L. and ELENA SHLEIFER, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) |
| | ) |
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Defendants. | ) |
| _____ | ) |

**<u>UNITED STATES' MOTION FOR SUMMARY JUDGMENT</u>**

This is a tax refund suit. Plaintiffs, Scott and Elena Shleifer, filed a claim for refund with the IRS seeking a $1.9 million refund in income tax for the 2014 tax year. In support of their claim, the Shleifers submitted a Schedule C for SLS Travel LLC reporting a $5.9 million loss that they used to reduce their taxable income. The loss arose from a claimed business expense for depreciation of a private jet in which Mr. Shleifer acquired an interest in November 2014. Mr. Shleifer used the private jet for five business flights in 2014, costing $217,204.89 in total.

The undisputed material facts demonstrate, as a matter of law, that the Shleifers are not entitled to the $5.9 million "business expense" claimed on the Schedule C. Mr. Shleifer did not operate SLS Travel LLC—the entity Mr. Shleifer used to purchase the interest in the private jet—as a business with the primary purpose to generate profit in 2014.

To the extent the Shleifers now claim entitlement to a refund because the depreciation deduction *could* have been claimed on a Schedule E as an unreimbursed partnership expense of Tiger Global Management, LLC, they are wrong because the private jet was not an expense of the partnership. And even if they were right, the Court is barred from considering this new refund claim under the variance doctrine. The United States is entitled to summary judgment.

## BACKGROUND

Scott Shleifer has worked for Tiger Global Management, LLC ("TGM"), an investment firm that is classified as a partnership for tax purposes since 2003. Statement of Undisputed Material Facts ("SUMF") ¶ 7. Mr. Shleifer was a partner of TGM in 2014 and helped manage its private equity business. *Id.* ¶8. At that time, TGM had a focus in investing in private companies in emerging markets, to include China, Russia, Brazil, and Argentina. *Id.* Mr. Shleifer would travel for TGM to meet with companies to conduct research and make investment decisions. *Id.* ¶¶ 9, 18.

TGM's Travel & Entertainment Policy

During 2014, TGM had a written policy for the reimbursement of business travel titled "Travel & Entertainment Policy Handbook." SUMF ¶ 11. The policy applied to Mr. Shleifer. *Id.* ¶ 10. The policy stated that TGM "will reimburse employees for reasonable business expenses" and that "any uncertainty with respect to a 'reasonable business expense' should be addressed with the CFO or the COO." *Id.*

The policy identified airfare as a reimbursable business expense and provided: "Tiger Global has negotiated arrangements with Pro Travel International Inc. and employees are expected to use this firm when making travel arrangements." *Id*. Under the policy, "[e]mployees are permitted to fly business class or similar category of airfare. If the flight is a 'red eye', or, if the scheduled one way flying time is greater than 5 hours, the employee may use the class of service that offers a 'substantially lie-flat' seat. Thus, if business class does not offer a lie flat seat the employee may fly first if that is the class of fare that offers such seating." *Id*. Further, "[e]mployees who fly in an unauthorized fare class will be responsible for personally paying the fare difference. (i.e., business to first or business to private, as applicable)." *Id*. ¶ 11. The policy also stated that "[a]ny business-related travel, hotel reservation arrangements, or other expenses that are outside the policies in the T&E Handbook must be pre-approved by the COO." *Id*. ¶ 10.

Mr. Shleifer's Bombardier Global 6000 Private Jet

On November 3, 2014, Mr. Shleifer, through SLS Travel LLC ("SLS"), purchased a 37.5 percent undivided interest in a Bombardier Global 6000 jet (tail no. N145QS) (the "Global Private Jet"), for $19,687,500 as a part of a NetJets fractional jet ownership program. SUMF ¶ 2.

SLS is a single member LLC created to facilitate the purchase of Mr. Shleifer's interest in private jets. *Id*. ¶ 3. It was not operated with a profit motive in 2014. *Id*. Mr. Shleifer testified that he was not aware specifically of SLS or its

creation, but he understood that he purchased his interest in the Global Private Jet through a limited liability company for liability purposes. *Id.*

The Global Private Jet was not the first private jet that Mr. Shleifer, through SLS, had acquired an interest in with NetJets and used for business and personal travel. *Id.* ¶ 5. Indeed, Mr. Shleifer, through SLS, had previously entered purchase or lease agreements for undivided interests in at least four other private jets with NetJets to include: a December 2013 lease agreement for a 37.5 percent undivided interest in a Gulfstream IV-SP (tail no. N403QS); an August 2013 lease agreement for a 25 percent undivided interest in a Gulfstream 550 jet (tail no. N546QS); an August 2013 lease agreement for a 25 percent undivided interest in a Gulfstream 450 jet (tail no. N448QS) and a February 2012 purchase agreement for a 12.5 percent undivided interest in a Gulfstream 450 jet (tail no. N455QS). *Id.* Mr. Shleifer did not have to fly on the exact tail number of the jet that he had an undivided interest in, rather, he could fly on any available jet of the same model.[1] *Id.* ¶ 6.

Despite the TGM policy that employees were expected to use Pro Travel International Inc. to arrange business travel, Mr. Shleifer did not use that service. *Id.* ¶12. Nor did Mr. Shleifer generally fly on commercial flights when conducting business travel for TGM. *Id.* ¶¶ 12, 13. Instead, he conducted his business travel for TGM on his private jets, including the Global Private Jet. *Id.* In 2014, Mr. Shleifer

---

[1] Because of this agreement, in the interest of clarity, the United States will treat Mr. Shleifer as having flown on the tail number of the jet that he was invoiced by NetJets as having flown on.

took 58 business flights on his private jets, costing $2,535,451.68. *Id.* ¶12, Ex. 8, Business Flights Spreadsheet. Only five of the 58 flights which were taken on the Global Private Jet. *Id.*

Mr. Shleifer was aware of the TGM policy that provided for reimbursement of commercial airfare for business travel, and that it did not include private jets. *Id.* ¶ 11. He testified that if "you wanted a private jet, you paid for it yourself." And that "my agreement with the partners was that I would pay for all my private airplane travel, on my own." *Id.* Greg Seidell, TGM General Counsel, confirmed that TGM policy was applicable to Mr. Shleifer in 2014, and that the policy did not cover the cost of travel on private aircraft. *Id.* at ¶10; *see also* Ex. 12, Seidell Decl. ¶ 13.

With respect to the Global Private Jet, the jet at issue in this case, Mr. Shleifer took 12 flights in 2014. SUMF ¶ 15. Of those 12 flights, seven were taken for personal trips, and five were taken for business trips. *Id.* ¶¶ 15-17. The five business flights were taken in November 2014 to travel roundtrip from Teterboro, New Jersey to Beijing and Shanghai, China to visit the Chinese companies JD, Soufun, Miyababy, and Nice—companies in which TGM held investments or were otherwise evaluating for investment purposes. *Id.*

The Shleifer's 2014 Tax Filings

The Shleifers filed their 2014 Form 1040 Individual Income Tax Return ("original return") on or around October 14, 2015. SUMF ¶ 20. The original return included a Schedule E "Supplemental Income and Loss" and a corresponding Supplemental Business Expense Worksheet upon which Mr. Shleifer claimed

deductions of $2,625,979 in "travel expenses" and $250,000 in "deal fees" as unreimbursed partnership expenses of TGM. *Id.* ¶ 21. Of the "travel expenses," approximately $2.5 million were comprised of costs related to flights taken on Mr. Shleifer's private jets throughout 2014. *Id.* The other approximately $100,000 of travel expenses claimed were for the cost of taking nineteen helicopter flights to commute to and from the airport *Id.* ¶ 22. Mr. Shleifer took helicopter flights and claimed those as unreimbursed partnership expenses of TGM despite the TGM policy which provided for reimbursement for the expense of using a car service to and from airports, when travelling on business trips. *Id.* ¶ 22. As for the $250,000 in "deal fees," Mr. Shleifer testified that he was not aware of what deal fees are or what they were related to. *Id.* ¶ 23.

On or around October 9, 2018, the Shleifers filed a 2014 Form 1040X Amended U.S. Individual Income Tax Return ("amended return"). *Id.* ¶ 24. The amended return is a claim for refund. The explanation of changes within the amended return provided: "Taxpayer inadvertently neglected to claim a depreciation deduction for business asset purchased and placed in service in 2014." *Id.*

Through their accountant, John Ablamsky, the Shleifers reported a $5,917,589 business loss for the business "SLS Travel LLC" on a Schedule C "Profit or Loss From Business." *Id.* ¶ 25. The loss arose from a claimed business expense for depreciation of the Global Private Jet. *Id.* On the Schedule C, the Shleifers described the principal business or profession of SLS as "business travel." *Id.* The

Shleifers did not report any other business expenses on the Schedule C, and they reported zero dollars in gross profits and gross income. *Id.* Claiming the depreciation deduction as a business expense on their Schedule C generated a $5.9 million loss reported on the Shleifers' Form 1040, which reduced their tax due by $1,898,789—the amount that the Shleifers sought to recover in their claim for refund. *Id.,* Ex. 6, Form 1040X.

In July 2020, the IRS selected the Shleifers' 2014 Form 1040X for examination limited to the Schedule C claim. *Id.* ¶ 26. During the examination, the IRS requested documents from the Shleifers (through their representative, Mr. Ablamsky) to support the deduction claimed on the Schedule C. *Id.* ¶ 27. The IRS provided the Shleifers with multiple extensions of time to produce the requested documentation. *Id.* Ultimately, the Shleifers failed to substantiate their entitlement to the reported business loss and the resulting refund. *Id.*

On March 23, 2022, the IRS sent a notice proposing the disallowance of the Shleifer's claim for refund. *Id.* ¶ 28. A month later, after receiving no response, the IRS examining officer spoke to Mr. Ablamsky, who stated that he disagreed with the IRS's findings and requested an additional two weeks to submit a written response. *Id.* But Mr. Ablamsky never submitted a written response. *Id.* And so, on July 6, 2022, the IRS issued a Notice of Disallowance denying the Shleifer's $1,898,789 claim for refund for the 2014 tax year.  *Id.* ¶ 29.

The Shleifers never refiled a Form 1040X seeking to claim a depreciation deduction for the Global Private Jet on a Schedule E as an unreimbursed partnership expense. *Id* ¶ 29.

## ARGUMENT

### I.     Standard of Review

In this refund suit, the Shleifers bear the burden to prove that they are entitled to the refund that they seek. *Rubenstein v. United States*, 826 F. Supp. 448, 453 (S.D. Fla. 1993), *aff'd* 103 F.3d 147 (11th Cir. 1996). Further, because tax deductions are matters of legislative grace, the Shleifers must establish entitlement to a particular deduction. *Muñiz v. Comm'r,* 661 F. App'x 1027, 1028 (11th Cir. 2016).

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Courts have explained that "[a] fact is 'material' only if it has the potential to affect the outcome of the case, and a dispute is 'genuine' only if a reasonable jury could return a verdict for the non-moving party." *Victor Elias Photography, LLC v. Ice Portal, Inc.*, 43 F.4th 1313, 1319 (11th Cir. 2022). The nonmoving party cannot rest on mere allegations to overcome a properly supported motion for summary judgment. *Moses v. American Nonwovens, Inc.*, 97 F.3d 446, 447 (11th Cir. 1996). Rather, the nonmoving party must produce "sufficient evidence of every element that he or she must prove." *Rollins v. Techsouth*, 833 F.2d 1525, 1528 (11th Cir. 1987).

Here, the Shleifers cannot produce "sufficient evidence" that they are entitled to a $1.9 million refund. They cannot claim the $5.9 business expense on the Schedule C because they admit that SLS Travel was not engaged in a business for profit. SUMF ¶ 3. Additionally, assuming the variance doctrine does not bar the Shleifers from now pursuing a refund based on a claim they did not previously make, they cannot produce "sufficient evidence" to show that they are entitled to a deduction on Schedule E as unreimbursed partnership expense of TGM.

## II.    The Shleifers are not entitled to the depreciation deduction claimed on their Schedule C.

Taxpayers attach Schedule C to their tax returns to report profit or loss from a trade or business—an activity undertaken for the primary purpose of generating income or profit and that the taxpayer is involved in with continuity and regularity. *Lockett v. Comm'r,* 306 F. App'x 464, 467-468 (11th Cir. 2009) (citing *Comm'r v. Groetzinger,* 480 U.S. 23, 25 (1987)); *see also* 2014 Instructions for Schedule C, available at *https://www.irs.gov/pub/irs-prior/i1040sc--2014.pdf*.  On a Schedule C, a taxpayer reports his trade or business's income and expenses. The net profit or loss from the trade or business is then reported on the taxpayer's Form 1040. Net profit increases a taxpayer's income, and a loss reduces the taxpayer's income.

One of the expenses a taxpayer may claim on Schedule C is for depreciation. A depreciation deduction is allowed for reasonable exhaustion and wear and tear of property used in a trade or business. 26 U.S.C. 167(a)(1).[2]

---

[2] The Shleifers' depreciation deduction is comprised of an ordinary depreciation deduction under Sections 167(a)(1) and 168(a), and a "bonus depreciation" deduction

The Shleifers attached a Schedule C to their Form 1040X for SLS Travel on which they reported a loss of $5.9 million resulting solely from a business expense deduction for depreciation of the Global Private Jet. SUMF ¶ 25. The Shleifers then reported this loss on their 1040 to reduce their income.

The Shleifers are not entitled to any loss associated with SLS Travel. Contrary to what is reported on the Schedule C, SLS Travel was not in the trade or business of "business travel." It was a vehicle through which Mr. Shleifer acquired his interest in private jets. SUMF ¶ 3. Indeed, the Shleifers and their accountant admit that SLS Travel was not an activity engaged in for profit. SUMF at ¶ 3, 25.

If this admission were not enough, a cursory review of the Schedule C shows that SLS Travel was not a trade or business. It reports only the claimed expense of $5.9 million and a corresponding loss. SUMF ¶ 25; see also Ex. 6, Form 1040X at 5. Absent from the Schedule C are any items, such as gross receipts or sales, that suggest that SLS Travel was an activity engaged in for profit.

In sum, SLS was not operated as a trade or business with the primary purpose of generating income. Rather, SLS was a disregarded entity that Mr. Shleifer used to purchase his interest in the Global Private Jet. Thus, the Shleifers

---

under section 168(k)(1)(A), which provides for a special depreciation allowance equal to 50 percent of the adjusted basis for qualified property placed in service during 2014.  Under Section 280F(b)(1), the Shleifers' business use of the Global Private Jet at issue must have exceeded 50 percent in 2014 to use the General Depreciation System under Section 168(a) and claim bonus depreciation. The parties do not dispute that based on the 31.1 flight hours for business flights out of the total 54.1 flight hours taken on the Global Private Jet in 2014, Mr. Shleifer's business use percentage was 57.1 percent. SUMF, Ex. 5, SLS Travel Log.

cannot show that they are entitled to claim the "loss" from the Schedule C for SLS Travel on their amended return.

**III.    The Shleifers' refund claim fails even if the deduction had been claimed on a Schedule E as an unreimbursed partnership expense.**

In this action, the Shleifers contend that they "do not know why the depreciation deduction on their 2014 Form 1040X was filed on Schedule C rather than on Schedule E." SUMF, Ex. 16 at 5-6 (response to Interrogatory No.4). But even if the Shleifers had claimed the depreciation deduction on a Schedule E, they are not entitled to the refund they seek because the Global Private Jet was not an unreimbursed partnership expense of TGM. And in any event, as discussed in the next section, the Court is barred from considering this argument by the variance doctrine.

For the purposes of computing income and deductions, the business of a partnership is considered a separate business from that of the partners. *Brannen v. Comm'r,* 722 F.2d 695, 703 (11th Cir. 1984). Thus, as a general rule, a partner may not deduct the expenses of the partnership on his individual income tax return, even if the expenses were incurred by the partner in furtherance of partnership business. *McLauchlan v. Comm'r,* 558 F. App'x 374, 377 (5th Cir. 2014) (citing *Cropland Chem. Corp. v. Comm'r,* 75 T.C. 288, 295 (1980), *aff'd.,* 665 F.2d 1050 (7th Cir. 1981)). But an exception to this rule exists where "under a partnership agreement, a partner has been required to pay certain partnership expenses out of his own funds." *Id.* (quoting *Klein v. Comm'r,* 25 T.C. 1045, 1052 (1956)). In that

situation, a partner may deduct such expenses, known as "unreimbursed partnership expenses" ("UPE"), on his individual income tax return.

To determine whether a taxpayer may deduct an expense on his individual tax return as a UPE, the court must first examine whether the taxpayer was required to incur the expense at issue per the partnership agreement or routine practice equal to an agreement. *Id.* at 378. If so, the court then determines "whether those required expenses were reimbursable by the partnership." *Id.*

Here, the Shleifers are not entitled to the depreciation deduction even if it were claimed on a Schedule E because the Global Private Jet was not a partnership expense that Mr. Shleifer was required to incur. TGM did not require Mr. Shleifer— or any partner—to purchase an interest in a private jet, much less maintain an interest in multiple private jets. Indeed, Mr. Shleifer testified that a TGM partner could purchase a private jet if they "wanted to." SUMF, Ex. 2 at 36:15-24, 39:3-8 (Deposition of Scott Shleifer).

Nor is there any evidence in the record to show that TGM had agreed that the purchase of the Global Private Jet should be treated as an expense of the partnership. Rather, Mr. Shleifer chose to purchase the Global Private Jet and use it for business and personal travel, much like he chose to use his other private jets in 2014. *See* SUMF ¶ 5.

TGM did not require employees, including Mr. Shleifer, to incur travel expenses on behalf of the partnership. Indeed, TGM policy expressly provided that employees were expected to book commercial airfare (at business class or sometimes

first-class fares) when conducting business travel, and such expenses were reimbursable. SUMF ¶ 11. The policy identified flying private as an "unauthorized fare class" that employees would be personally responsible for paying the fare difference. *Id.* Nevertheless, Mr. Shleifer chose to purchase an interest in the Global Private Jet, despite maintaining interests in other private jets in 2014. He used the Global Private Jet and his other private jets to conduct 58 business flights, costing over $2.5 million, even though such fare class was not authorized by TGM. SUMF, Ex. 8, Business Travel Spreadsheet. And he did so with the understanding that he would be personally responsible for the cost of the Global Private Jet and the expense of flying on private jets. SUMF ¶ 11.

Indeed, Mr. Shleifer's testimony confirms his understanding that under the policy, the purchase of the Global Private Jet and the cost of flying via private jet was a personal expense. *Id.* Despite this understanding, the Shleifers now argue that they should be allowed to claim the depreciation of the Global Private Jet as a UPE because TGM would have been entitled to claim depreciation if it purchased the interest in the Global Private Jet.

Because TGM did not require partners to purchase private jets for business travel—or even require partners to incur the expense of business travel at all—the Global Private Jet is not a required partnership expense and thus any associated depreciation deductions cannot be claimed on a Schedule E as a UPE.

To be sure, the United States does not dispute that five of the twelve flights Mr. Shleifer took on the Global Private Jet in 2014 were in furtherance of TGM

business. But that is not the standard. It is necessary, not sufficient, that a partner's expense be incurred in furtherance of the partnership's business and unreimbursed by the partnership. *McLauchlan v. United States,* a Fifth Circuit opinion affirming a Tax Court order disallowing a taxpayer's claimed unreimbursed partnership expenses, is instructive on this point. *See* 558 F. App'x at 378.

In *McLauchlan,* the advertising expenses and home office expenses the taxpayer partner incurred were incurred in furtherance of the partnership's business and were unreimbursed. *Id.* at 379-380. And yet the Fifth Circuit held that the expenses were not deductible on the taxpayer's individual tax return because the partnership did not require him to incur those expenses. *Id.* To hold otherwise would render the general rule that a partner may not deduct the expenses of the partnership on his individual income tax return, even if the expenses were incurred by the partner in furtherance of partnership business, toothless. Indeed, this rule prevents taxpayers from converting any personal expense that could have some nexus to their partnership business into a Schedule E deduction on their individual tax return.

Further, the TGM written policy provides that any business-related travel or other expenses that are outside the policies of the T&E Handbook must be pre-approved by the COO. *See* SUMF, Ex. 12, Seidell Decl., at 12. But Mr. Shleifer does not recall if he ever sought pre-approval from the COO to purchase any business expense. SUMF ¶ 11.

14

The conclusion that the Global Private Jet was not a deductible UPE is also supported by the general principle that "if a partner has a right to reimbursement and does not elect to pursue it, that partner should not be entitled to deduct the expenses." *McLauchlan,* 558 F. App'x at 379. Here, Mr. Shleifer had the right to book reimbursable commercial airfare for business travel as provided by TGM written policy. But he instead elected to purchase an interest in another private jet to conduct his business travel in a fare class that the TGM policy explicitly deems "unauthorized." Thus, as a matter of law, the Shleifers are not entitled to depreciation deduction for the Global Private Jet as a UPE on a Schedule E.

**IV.     Even if the deduction would have been proper on a Schedule E, the variance doctrine precludes consideration of this issue.**

Even if the Shleifers were substantively entitled to the depreciation deduction for the Global Private Jet on a Schedule E—and they are not—the Court is barred from considering this argument by the variance doctrine.

The Shleifers assert that they are "not aware of why this deduction was listed specifically on Line 13 of Schedule C, but even if the use of Schedule C was mistaken as a matter of form, Plaintiffs nevertheless meet the substantive requirements for depreciation deductions under the law." SUMF, Ex. 16 at 5, (response to Interrogatory No. 2). But the Shleifers ignore that the form upon which a taxpayer decides to claim an expense or deduction necessarily impacts the inquiry the IRS makes in examining a taxpayer's entitlement to their claim for refund. Indeed, to the extent the Shleifers now contend that the depreciation deduction could be claimed on a Schedule E as an unreimbursed partnership expense, as

15

evident from the discussion above, a Schedule E deduction involves a separate analysis from that of a Schedule C deduction.

A taxpayer may not sue the United States for a tax refund until it first files a refund claim with the government. 26 U.S.C. § 7422(a). "The applicable regulations accompanying section 7422(a) require the taxpayer to detail each ground upon which a refund is claimed." Treas. Reg. § 301.6402-2(b)(1). "All grounds upon which a taxpayer relies must be stated in the original claim for refund so as to apprise the Commissioner of what to look into; the Commissioner can take the claim at its face value and examine only those points to which his attention is necessarily directed." *Alabama By-Products Corp. v. Patterson*, 258 F.2d 892, 900 (5th Cir. 1958)[3] (citing *United States v. Garbutt Oil Co.*, 302 U.S. 528 (1938)). "Federal courts have no jurisdiction to entertain taxpayer allegations that impermissibly vary or augment the grounds originally specified by the taxpayer in the administrative refund claim." *Charter Co. v. United States,* 971 F.2d 1576, 1579 (11th Cir. 1992).

"The law requires the taxpayer to do more than give the government a good lead based upon the government's purported ability to infer interconnectedness." *Id.* at 1579-80. Indeed, "[a]t a minimum the taxpayer must identify in its refund claim the 'essential requirements' of each and every refund demand." *Id.* at 1580 (collecting cases). This way, the IRS has the essential facts to allow it to make a

---

[3] *See Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc) (adopting all decisions of the former Fifth Circuit announced prior to October 1, 1981 as binding precedent in the Eleventh Circuit).

determination as to the refund claim and "resolve disputes in the first instance without litigation." *Sanders v. United States,* 740 F.2d 886, 890 (11th Cir. 1984).

Here, the Shleifers' refund claim is based on a Schedule C which reported SLS's alleged $5.9 million business loss. The IRS examining agent evaluated whether SLS qualified as a trade or a business so that Mr. Shleifer could claim the business expense deduction associated with the Global Private Jet. SUMF, Ex. 15, IRS Activity Record; ECF 1-3. The examining agent considered that in 2014 SLS generated no gross receipts and did not offer plane or other travel services to the public. SUMF, Ex. 15, IRS Activity Record; ECF 1-3. Based on these facts, the examining agent determined that SLS was not operated as a trade or business with the expectation of earning revenues. SUMF, Ex. 15, IRS Activity Record; ECF 1-3. Thus, as a matter of law, SLS was not entitled to the claimed expense and resulting loss it reported on Schedule C.

The Shleifers did not file a claim for refund that claimed the depreciation deduction at issue on a Schedule E. Nor did the Shleifers identify during the administrative process the essential requirements to support a claim for refund on the basis that the depreciation deduction was an unreimbursed partnership expense of TGM. SUMF ¶ 29. As described above, entitlement to the deduction as a UPE would require an exploration of the business of TGM and Mr. Shleifer's role in TGM, as well as TGM's policies and practices regarding partnership expenses and reimbursement. At no point during the IRS administrative process did the Shleifers or Mr. Ablamsky provide the examining agent with any documentation

17

substantiating the deduction as a UPE. And this information was not otherwise requested by the IRS examining agent because they were not relevant to the Schedule C loss upon which the administrative claim was based.

Accordingly, to the extent the Shleifers now contend they are entitled to a refund because the depreciation deduction they claimed as a Schedule C business expense *could be* claimed on a Schedule E as a UPE, they are barred by the variance doctrine. *See Charter,* 971 F.2d at 1580; *see also Gustin v. United States,* 876 F.2d 485, 488 (5th Cir. 1989) ("It is not sufficient that the Internal Revenue Service has information somewhere in its possession from which it might deduce that the taxpayer is entitled to a refund, nor is it sufficient that a claim involving the same ground has been filed for another year or by a different taxpayer.").

The United States acknowledges that Mr. Ablamsky may have made an oral request to the examining agent for the opportunity to refile the Form 1040-X claiming the depreciation deduction on a Schedule E. SUMF, Ex. 3 at 120:21-122:21 (Deposition of John Ablamsky). But this purported oral request is immaterial. To the extent the Shleifers attempt to construe the request as an informal claim for refund, an oral request alone does not defeat the variance doctrine. Indeed, an informal claim for refund generally must have a written component. *See, e.g., Vintilla v. United States,* 931 F.2d 1444, 1446 (11th Cir. 1991) (quoting *Gustin,* 876 F.2d at 488) (explaining that "an oral claim, even if it gives actual notice to an Internal Revenue Service employee that a refund is being filed, is not valid").

Accordingly, the variance doctrine bars consideration of the Shleifers' argument that they are entitled to a refund because they *could* have claimed the deduction on a Schedule E. The Court should consider only the Shleifers' entitlement to the depreciation deduction it claimed on a Schedule C as it was raised in their claim for refund. And, as discussed above, the Shleifers, as a matter of law, are not entitled to the Schedule C deduction and loss.

## V.   Conclusion

This case presents a simple question: was Mr. Shleifer's Global Private Jet a business expense of the entity SLS Travel LLC? The undisputed facts show it was not. Thus, the Shleifers cannot meet their burden to substantiate entitlement to the $1.9 million refund they seek.

The Court should not consider the Shleifers' hypothetical entitlement to a refund if they had chosen to claim a deduction on a different form and presented the Global Private Jet as a UPE of TGM, rather than as a business expense of SLS. And even if the Court reaches the substance of the Shleifers' UPE theory, it should reject it because the Global Private Jet was not a partnership expense.

The Court should enter summary judgment in favor of the United States.

Dated: April 15, 2025                     Respectfully submitted,


                                          **Hana Bilicki**
                                          HANA BILICKI
                                          Trial Attorney
                                          Special Bar No. A5502961

19

**Amanda King**
AMANDA J. KING
Trial Attorney
Special Bar No. A5502559

**U.S. Department of Justice,
Tax Division**
P.O. Box 14198
Washington, D.C. 20044
(202) 616-2904 (v) (Bilicki)
(202) 518-8048 (v) (King)
(202) 514–6866 (f)

Hana.Bilicki@usdoj.gov
Amanda.King@usdjoj.gov


Of Counsel:

Hayden O'Byrne
Interim United States Attorney
Southern District of Florida

*Counsel for United States of America*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 15, 2025, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will give notice of the filing to all registered participants.

**Hana Bilicki**
HANA BILICKI
Trial Attorney, Tax Division
U.S. Department of Justice
