IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

Case No. 9:24-cv-80713-RLR

| | |
|---|---|
| SCOTT L. and ELENA SHLEIFER, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) |
| | ) |
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Defendants. | ) |

**THE UNITED STATES' REPLY IN SUPPORT OF ITS
MOTION FOR SUMMARY JUDGMENT**

The Shleifers seek permission to land their claim before receiving clearance for takeoff. The Court need only consider whether the Shleifers can substantiate the amount of the deduction if they meet the threshold requirement that they are entitled to claim a depreciation expense deduction for the Global Private Jet. The Shleifers cannot meet the threshold requirement. They admit that they cannot claim the depreciation on Schedule C—as asserted in their administrative claim—because SLS Travel LLC ("SLS") was not a trade or business engaged in for profit. And the variance doctrine bars the Court from entertaining the Shleifers' argument that they are entitled to claim the deduction as an unreimbursed partnership expense ("UPE") on a Schedule E because they never asserted this as a ground for relief in their administrative claim.

But even if the variance doctrine does not apply, the Shleifers' claim remains grounded. A partner may deduct UPE on his individual tax return only if there is an agreement among the partners—either express or implied through regular practice—that the partner must incur partnership expenses out of pocket. The undisputed material facts show that Mr. Shleifer's partnership, Tiger Global Management ("TGM"), had no such agreement, either express or implied. Indeed, TGM had a policy under which its partners could be reimbursed for travel costs. Mr. Shleifer chose to buy a private jet for work related travel rather than avail himself to that policy. Thus, the Shleifers cannot meet the threshold inquiry for their Schedule E claim. Summary judgment should be entered in favor of the United States.

**ARGUMENT**

The Shleifers have the burden to establish that they are entitled to a depreciation expense deduction and, if so, the amount of the deduction. Based on the undisputed facts, the Shleifers cannot clear their first hurdle and prove they are entitled to claim a deduction for the depreciation expense. By their admission, the Shleifers cannot claim the deduction on Schedule C. And so, they ask the Court to allow the deduction as a UPE under Schedule E. The variance doctrine bars this argument because the IRS never had the opportunity to investigate this basis for relief at the administrative level. But even if the variance doctrine does not bar the UPE argument, the Shleifers cannot meet their burden because TGM did not have

2

an agreement, either express or implied through routine practice, that its partners must incur personally incur travel costs in furtherance of partnership business. Thus, the United States is entitled to judgment as a matter of law.

I. **The Shleifers are not entitled to claim a loss on a Schedule C as SLS is not a business or activity engaged in for profit.**

A taxpayer attaches a Schedule C to their tax return to report profit or loss from a trade or business operated as a sole proprietorship with the primary purpose of generating income or profit. Here, the Shleifers filed a Schedule C for SLS reporting a loss. But SLS was not a trade or business undertaken to generate profit. This is not a contested fact—the Shleifers admit it. In their response, the Shleifers state that filing a claim for refund for a Schedule C loss was a "mistake." ECF 47 at 7. The Shleifers never submitted a written claim for refund on any other basis to correct this "mistake." *Id*. As the parties agree that the SLS is not a trade or business engaged in for profit, the Shleifers are not entitled to claim the Schedule C loss reported on their on their amended return.

II. **The variance doctrine limits the Court's jurisdiction to hear only whether the Shleifers are entitled to a loss on Schedule C.**

The Shleifers admit that their contention in this case varies from their administrative claim for refund. Still, they claim that the Court can entertain this new contention because the form on which they claimed depreciation is immaterial. The Shleifers are wrong. Their contention in this suit concerns a separate inquiry—factually and legally—from their contention at the administrative level. Thus, their claim here impermissibly varies "from the grounds originally specified . . . in the

3

administrative refund claim." *Charter Co. v. United States*, 971 F.2d 1576, 1579 (11th Cir. 1992).

As the Shleifers state, the variance doctrine is "rooted in the statutory requirement that a taxpayer must first *file* an administrative claim for refund before filing a refund suit." ECF 47 at 10 (citing 26 U.S.C. § 7422(a)) (emphasis added). The administrative claim must state "[a]ll grounds" on which a refund is sought, and the IRS "can take the claim at face value and examine only those points to which [its] attention is necessarily directed." *Ala. By-Products Corp. v. Patterson*, 258 F.2d 892, 900 (5th Cir. 1985). "Subsequent litigation of the government's denial of a refund claim is limited to the grounds fairly contained within the refund claim. *Charter Co.* 971 F.2d 1576 at 1579.

Here, the Shleifers' administrative claim for refund was based on the loss reported on the Schedule C for SLS. And so, the IRS's examination (and any subsequent litigation) was limited to SLS's Schedule C:

| Date (mmddyyyy) | LOC | CONT | Time on Activity | Remarks, Notes, Actions Taken |
|---|---|---|---|---|
| 7/21/21 | TW | | 4 | Pre-audit: Claim case transferred to agent. RGS file is not available. RA reviewed paper file. F1040X, and original F1040, statute 10/AA/2018. Audit limited to claim issue. TP requests refund for Sch C loss. No Sch C was filed with original return. POA, IDR not included in paper file. |

ECF 40-15 at 1, Examining Officer's Activity Record.

For an examination of a Schedule C loss, the first step is to determine whether the trade or business is a trade an activity engaged in for a profit. If the IRS determines that the trade or business is not an activity undertaken for profit, the inquiry ends, and the deduction is disallowed. *See* 26 U.S.C. § 162(a) (allowing

4

taxpayers to deduct ordinary expenses paid "in carrying on any trade or business"). Here, the revenue agent gathered facts to make that determination. ECF Nos. 40-15 at 2, 44-1 at 2 (discussing materials reviewed during exam). Based on the information received from the Shleifers, the agent determined that SLS was not an activity engaged in for profit and disallowed the claim for refund:

> Depreciation of airplane was reported on taxpayer's F1040X Sch C. Schedule C was created for the sole purpose of reporting the Depreciation expense in 2014. No Gross Receipts were generated. Sch C was not a trade or business with the expectation of earning Revenues. Airplane services were never offered to the public in general.

ECF 44-1, Schedule C – Depreciation Expense Lead Sheet. Because the Schedule C argument was the only grounds for relief "fairly contained within" the Shleifers' refund claim, litigation of the denial of their refund claim is limited to that argument. *Charter Co.*, 971 F.2d at 1579.

The Shleifers admit that the agent correctly disallowed the Schedule C loss. But they contend they are entitled to the refund because they could have claimed a depreciation deduction on Schedule E as a UPE. The Shleifers, however, never raised this argument at the administrative level. Thus, the Court lacks jurisdiction to hear this argument now.

An examination of a Schedule E UPE requires the IRS to undertake a different factual and legal analysis than an examination of a Schedule C loss. As noted above, the Schedule C exam focused on whether SLS was a trade or business engaged in for profit. Whether SLS was a trade or business is irrelevant to the Schedule E analysis. The Schedule E inquiry focuses on whether TGM had an

5

agreement among its partners, in writing or in practice, that required partners to pay certain expenses of the partnership from their own funds. *See McLauchlan v. Comm'r*, 558 F. App'x 374, 377 (5th Cir. 2014). To determine whether any such agreements existed, the IRS needs documents and information about TGM's policies. The IRS gathers this information from the taxpayer directly and, if necessary, from third parties through administrative summonses for documents and testimony. But the IRS gathers those facts only if the taxpayer asserts a UPE as a ground for his refund claim. The Shleifers did not place the IRS on notice that it sought a refund based on a UPE. Thus, the IRS limited its examination to the "face value" of the Shleifers' administrative claim. *Ala. By-Products Corp.*, 258 F.2d at 900. Indeed, the record lacks any evidence that the IRS requested, received, or reviewed any documents from TGM that would bear on the UPE analysis.

Although the Shleifers acknowledge that they never placed the IRS on written notice of their Schedule E UPE claim, they contend that their accountant put the IRS on verbal notice of this ground for relief. But the law requires taxpayers to provide the IRS of *written* notice of their claims. *Vintilla v. United States*, 934 F.2d 1444, 1446 (11th Cir. 1991) (stating that even if there is verbal notice of a claim, it is not valid until filed). Taxpayers must adhere to the written notice requirement even if they believe their claim is futile. Indeed, without a written claim, the IRS can only "hazard a guess" about the Shleifers' UPE arguments.

6

*Charter Co.*, 971 F.2d at 1579. As the Eleventh Circuit has explained, the IRS "is not required to be so prescient." *Id.*

The Examining Officer's Activity Record shows that the IRS gave the Shleifers an opportunity to put their Schedule E UPE argument in writing. ECF 40-15 at 2 (entry dated 4/26/22). But the Shleifers failed to take advantage of this opportunity. And so, the agent closed the examination after considering the only ground for relief the Shleifers put in writing—whether the Shleifers were entitled to a Schedule C loss from SLS.

Contrary to what the Shleifers suggest, this Court should not look past their failure to properly place the IRS on notice of their Schedule E UPE argument because their failure was a "tax neutral mistake." ECF 47 at 3. The tax outcome is immaterial to the variance doctrine. The variance doctrine focuses on whether the taxpayer placed the IRS on notice of the "essential requirements" of each basis for relief. *Charter Co.*, 971 F.2d at 1580. Here, the essential requirements of the Shleifers' administrative claim for refund—a Schedule C loss—and their claim in this suit—a Schedule E UPE—are not the same. As discussed above, those separate bases for relief require the development of separate and unrelated facts and the application of separate and unrelated law. The IRS was on notice only of the Shleifer's Schedule C loss claim. Any other argument, including the Schedule E UPE argument, impermissibly varies from the Shleifer's administrative claim and cannot be considered in this suit.

### III. The Shleifers are not entitled to the $5.9 million depreciation deduction even if it was filed on a Schedule E.

A taxpayer is entitled to a UPE on Schedule E where there is an "agreement among the partners or a routine practice equal to an agreement, that requires a partner to use his or her own funds to pay a partnership expense." *McLauchlan v, Comm'r*, 102 T.C.M. (CCH) 579, at *2 (T.C. 2011), *aff'd and remanded*, 558 F. App'x 374 (5th Cir. 2014). The parties agree on this point. The parties also agree that there is an exception to this general rule: where a partnership agreement requires a partner to pay certain expenses or where the partners understand by way of routine practice that it is necessary for the partners to incur certain expenses in the business of a partnership, a partner may deduct a partnership expense paid by the partner on his or her return. *See McLauchlan*, 558 F. App'x at 378 n.3.

The Shleifers cannot meet this exception. The record lacks any evidence of an agreement among TGM's partners that partners are expected to incur partnership travel expenses out of pocket, let alone purchase private aircraft for business travel. To the contrary, TGM had a travel policy that specified that partners, such as Mr. Shleifer, were entitled to reimbursement for travel costs within certain fares. Thus, unless Mr. Shleifer can show by routine practice that the partners of TGM understood that it was "necessary for partners" to incur travel expenses in an unauthorized fare class for TGM's business, he cannot claim the depreciation deduction as a UPE. *See McLauchlan,* 558 F. App'x at 378 n.3.

Again, Mr. Shleifer cannot establish such a practice. He can establish only that TGM required him to travel and that he was entitled to reimbursement up to a certain amount, depending on fare class. Indeed, Mr. Shleifer has no evidence of an understanding among TGM's partners that they are expected to personally incur travel costs. As Mr. Shleifer testified, it was his "deal" that if he wanted to buy a private aircraft he could. Put simply, TGM left "the management of private travel to the partners themselves." ECF 47 at 10.

The Shleifers' response underscores that the purchase of the aircraft was a matter of convenience to accommodate his schedule and personal needs, not a necessity. But even if it was necessary for Mr. Shleifer to incur the cost of a private carrier for his trip to China, it does not follow that it was necessary for Mr. Shleifer to purchase a private aircraft to do so. For example, Mr. Shleifer could have chartered private aircraft. And in that situation, he could have sought approval from TGM's Chief Operating Officer for reimbursement of this out-of-policy airfare. ECF 40-12 at 12. The Shleifers fail to recognize this. They assume that if TGM's partners understood that it was necessary for partners to pay for travel out of pocket, any travel expenses, including depreciation of a private jet, are deductible as UPE. But this assumption runs counter to the requirement that for an expense to be deductible as a UPE, it must be clear that the expense was identified or "by routine practice understood as *necessary* for partners to incur in the business of the

9

partnership." *McLauchlan*, 558 F. App'x 378 n.3 (emphasis added). The requirement that the expense be necessary safeguards against abuse of this deduction.

Mr. Shleifer chose to buy a private jet for his own convenience (and personal use). The purchase of which was not understood by an express agreement or routine practice of TGM's partners as necessary for the partners to incur in TGM's business. Thus, Shleifers are not entitled to a UPE on Schedule E.

## CONCLUSION

No matter what course they try to chart, the Shleifers' claim for refund fails. The Court should deny the Shleifers' motion for summary judgment and grant the United States' cross-motion.

Dated: May 5, 2025                                      Respectfully submitted,

**Hana C. Bilicki**
HANA C. BILICKI
Trial Attorney
Special Bar No. A5502961

**Amanda J. King**
AMANDA J. KING
Trial Attorney
Special Bar No. A5502559

**U.S. Department of Justice,
Tax Division**
P.O. Box 14198
Washington, D.C. 20044
(202) 616-2904 (v) (Bilicki)
(202) 518-8048 (v) (King)
(202) 514–6866 (f)

Hana.Bilicki @usdoj.gov
Amanda.King@usdjoj.gov

        Of Counsel:

        Hayden O'Byrne
        Interim United States Attorney
        Southern District of Florida

        *Counsel for United States of America*

## CERTIFICATE OF SERVICE

I hereby certify that on May 5, 2025, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will give notice of the filing to all registered participants.

        **Amanda King**
        AMANDA KING
        Trial Attorney, Tax Division
        U.S. Department of Justice