UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 24-CV-80713-ROSENBERG

SCOTT L. SHLEIFER and ELENA SHLEIFER

   Plaintiffs,

v.

UNITED STATES OF AMERICA,

   Defendant.
_____/

### ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

This Cause is before the Court on Plaintiffs Mr. Scott L. and Mrs. Elena Shleifer's Motion for Summary Judgment [DE 36] and Defendant United States' Motion for Summary Judgment [DE 41]. The motions are fully briefed and have been reviewed by the Court. For the reasons discussed below, Defendant's Motion for Summary Judgment is **GRANTED** and Plaintiffs' Motion for Summary Judgment is **DENIED**. The Clerk is ordered to **CLOSE** this case.

### I.   BACKGROUND[1]

This case is a tax refund suit stemming from Plaintiffs' claim for a $1,898,786 refund in income tax for the 2014 tax year. DE 1. Plaintiffs Mr. and Mrs. Shleifer are a married couple. DE 38 ¶ 1. In 2014, Mr. Shleifer was a partner at an investment firm which required him to travel domestically and abroad to research new and existing investment opportunities. *Id.* ¶¶ 4–5. He was also the sole owner of SLS Travel LLC ("SLS"), an entity which holds his business travel

---

[1] The background facts rely primarily on undisputed facts. When disputed, the Court notes the dispute and views all facts in the light most favorable to Plaintiffs.

assets, *id.* ¶ 15, and was not operated to generate a profit, DE 40 ¶ 3. SLS purchased a 37.5% undivided interest in a private jet for $19,687,500. DE 38 ¶¶ 16–17. Although Mr. Shleifer's investment firm offered reimbursements for commercial airfare for business travel, he chose to fly private through SLS and pay the costs himself. *Id.* ¶¶ 22–23; DE 40 ¶ 11. During the 2014 tax year, Mr. Shleifer flew for a total of 54.1 hours, 31.1 of which were attributable to flights for business. DE 40 ¶ 19.

Plaintiffs filed their 2014 Form 1040 jointly as a married couple. DE 38 ¶ 29. The original return included a Schedule E "Supplemental Income and Loss" and a corresponding Supplemental Business Expense Worksheet to claim $2,625,979 in deductions for travel expenses as unreimbursed partnership expenses. DE 40 ¶ 21. Plaintiffs timely paid the required tax reported on their 2014 Form 1040. DE 38 ¶ 30. Then, in October 2018, Plaintiffs jointly filed an amended return for the 2014 tax year seeking a refund of $1,898,785. DE 38 ¶ 31. The amended return included a Form 4562 which reported a depreciation deduction related to the private jet acquired by SLS in the total amount of $5,917,589. *Id.* ¶ 32. Plaintiffs' total depreciation deduction is comprised of an ordinary depreciation deduction under 26 U.S.C. §§ 167(a)(1) and 168(a), and a "bonus depreciation deduction" under § 168(k)(1)(A). DE 41 9 n.2. The latter provides for a special depreciation allowance equal to 50% of the adjusted basis for qualified property placed in service during the 2014 tax year. 26 U.S.C. § 168(k). The parties do not dispute that the deduction was calculated correctly. *Id.*; DE 36 8 n.1. Plaintiffs' sole basis for the amended return was that they "inadvertently neglected to claim a depreciation deduction for a business asset purchased and placed in service in 2014." DE 40 ¶ 24. They included the depreciation deduction in the amended return through a Schedule C "Profit or Loss From Business" which also reported that SLS had zero dollars in gross profits and income. *Id.* ¶ 25. By claiming the deduction on the Schedule C,

2

Plaintiffs reduced their tax due for the 2014 tax year by $1,898,785—the amount they sought to recover through the amended return. *Id.*

In July 2020, the IRS selected Plaintiffs' amended return for an examination related to their claimed deduction. DE 38 ¶ 34.  The IRS requested that Plaintiffs, through their accountant and examination representative, John Ablamsky, produce documents to substantiate that they were entitled to the deduction as reported on the Schedule C in their amended return. DE 40 ¶ 27. Ultimately, the IRS determined that Plaintiffs failed to substantiate their entitlement to the reported business loss and resulting refund through the Schedule C. *Id.*  On March 23, 2022, the IRS sent a notice to Plaintiffs proposing the disallowance of their claim for a refund. *Id.* ¶ 28.

Then, on April 26, 2022, Mr. Ablamsky spoke with the examining IRS agent and requested additional time to submit a response to the notice. DE 40-15, 2.  During that conversation, Mr. Ablamsky orally advised the IRS agent that the depreciation deduction was reported as an unreimbursed partnership expense in the 2015 tax year as well as in subsequent tax return filings. DE 48 ¶ 35.  He further explained that such a deduction should have been reported on a Schedule E, rather than a Schedule C, in the amended return. *Id.* ¶ 33.  In fact, the amount of Plaintiffs' depreciation deduction related to the private jet would have been the same whether the deduction was reported on a Schedule E or Schedule C. *Id.* ¶ 38.  After that conversation, the IRS agent noted in his Examining Officer's Activity Record that "[e]xamination found Depreciation Expense is an investment expense that can be deducted against Flow-thru income on Sch. E." *Id.* ¶ 36.  In his written report, the IRS agent further acknowledged that the depreciation deduction might have been valid if it had been claimed on a Schedule E. *Id.* ¶ 27.  However, neither Mr. Ablamsky nor Plaintiffs produced any written request or documentation to substantiate or initiate an examination as to whether the deduction would have been allowed through a Schedule E. *Id.* ¶ 28.  Although

disputed, Plaintiffs allege that the IRS agent told Mr. Ablamsky that such a deduction would not be allowed and, as a result, Mr. Ablamsky believed submitting such materials would be futile and did not do so. *Id.*; *but see* DE 40-15, 2 ("RA agreed to extension of time for response").[2] Because no response was submitted, the IRS issued a Notice of Disallowance on July 6, 2022, denying Plaintiffs' claim for a refund for the 2014 tax year. DE 40 ¶ 29. Plaintiffs then initiated this suit challenging the disallowance of the deduction.

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 56(a), summary judgment is proper if the record evidence shows "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Grayson v. Warden, Comm'r, Ala. Dep't of Corr.*, 869 F.3d 1204, 1220 (11th Cir. 2017) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). A fact is material "only if it has the potential to affect the outcome of the case" and a dispute is genuine "only if a reasonable jury could return a verdict for the non-moving party." *Victor Elias Photography, LLC v. Ice Portal, Inc.*, 43 F.4th 1313, 1319 (11th Cir. 2022). Summary judgment is also appropriate when the non-moving party has failed to prove an essential element of its case. *Id.* In a tax refund suit, the taxpayer has the burden of proof to establish that the determination of the IRS is incorrect. *Central Bank of the South v. United States*, 834 F.2d 990, 993 (11th Cir. 1987); *Muñiz v. Comm'r IRS*, 661 F. App'x 1027, 1028 (11th Cir. 2016) ("Income-tax deductions are matters of legislative grace, and taxpayers must comply with the specific requirements for any deductions claimed.").

---

[2] The Court views this fact in the light most favorable to Plaintiffs for the purposes of adjudicating the present motions and assumes it to be true.

When reviewing a motion for summary judgment, a court must "view all of the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor." *Furcon v. Mail Centers Plus, LLC*, 843 F.3d 1295, 1304 (11th Cir. 2016). Thus, a district court "may not weigh conflicting evidence or make credibility determinations" when reviewing a motion for summary judgment. *Jones v. UPS Ground Freight*, 683 F.3d 1283, 1292 (11th Cir. 2012) (citing *FindWhat Investor Grp.*, 658 F.3d at 1307). Where the non-moving party presents facts that contradict the facts set forth by the moving party, the motion must be denied, assuming the facts in dispute are material. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990). However, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

### III. ANALYSIS

As an initial matter, Plaintiffs have met the procedural requirements to initiate this suit for a refund against the United States because they first filed "a claim for a refund . . . with the [IRS]." 26 U.S.C. § 7422(a). The claim was timely made as it was filed within three years of the filing date of their 2014 tax return. DE 21 ¶ 15; 26 U.S.C. § 6511(a) (requiring a refund be filed "within 3 years from the time the return was filed or 2 years from the time the tax was paid"). And the suit was timely filed as it was initiated within the two-year statute of limitation. 26 U.S.C. § 6532(a)(1). Accordingly, the Court has jurisdiction to adjudicate the case.

Now Plaintiffs move for summary judgment and argue that they should be award the $1,898,785 refund because the depreciation deduction should have been allowed as an unreimbursed partnership expense. DE 36. Defendant also moves for summary judgment. It

argues that Plaintiffs are neither entitled to the deduction as a loss from a trade or business through the Schedule C nor as an unreimbursed partnership expense through the Schedule E, and that even if Plaintiffs were entitled to the latter deduction, the Court is precluded by the variance doctrine from considering the argument.  DE 41.  The Court finds that (1) Plaintiffs were not entitled to a deduction as a loss from a trade or business, and (2) the Court is precluded from considering Plaintiffs request for a deduction as an unreimbursed partnership expense.

As discussed below, the variance doctrine is one of fairness.  It is intended to allow the IRS an opportunity to intelligently evaluate a taxpayer's claim for refund without incurring the cost of litigating the merits of that claim.  In other words, without an opportunity to review a reasoned and explicit explanation of the grounds for taking a deduction, the Court is not permitted to evaluate those reasons for the first time and the IRS is not required to defend against such a theory for a refund.  This means that whether an IRS agent could infer that a deduction might be desired or allowable or had some of the relevant information available to him to make such a determination, such as that the deduction was taken in other years, is not sufficient to avoid preclusion under the variance doctrine.  Instead, to preserve the claim for a refund, a taxpayer must conform the return to the Treasury Regulations and set forth the essential requirements of each and every refund claimed.  If the claim is not advanced properly during the administrative review, the variance doctrine militates that a federal court has no jurisdiction to examine the claim. In this instance, the Court does not have jurisdiction to examine the claim and thus, does not reach the question as to whether Plaintiffs are entitled to a deduction as an unreimbursed partnership expense.

1.      **Plaintiffs' claim for a deduction as a loss from a business or trade.**[3]

Because SLS was not operated as a trade or business with the primary purpose of generating income, Plaintiffs are not entitled to a deduction as originally sought through their amended tax return. A taxpayer may use a Schedule C to report trade or business income and expenses. *See Provitola v. Comm'r*, 859 F. App'x 474, 475–76 (11th Cir. 2021); 2014 Instructions for Schedule C, available at https://www.irs.gov/pub/irs-prior/i1040sc--2014.pdf. The net profit or loss from that trade or business is then reported on the taxpayer's Form 1040. 2014 Instructions for Schedule C. While net profits increase a taxpayer's income, net losses reduce a taxpayer's income. *Cf.* 26 U.S.C. § 165(c) (allowing for a deduction of "all ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business"). One expense that a taxpayer may claim on a Schedule C is for the depreciation of reasonable exhaustion of property used in a trade or business. *Id.* § 167(a)(1). However, the deduction must be associated with a loss resulting from a "trade or business" and the "primary purpose for engaging in the activity must be for income or profit." *Lockett v. Comm'r*, 306 F. App'x 464, 467–68 (11th Cir. 2009).

Here, Plaintiffs claimed $5,917,589 in a depreciation deduction resulting solely from their use of the private jet obtained through SLS. DE 40 ¶ 25. Plaintiffs reported this loss on the Schedule C which was attached to the amended tax return for the 2014 tax year. However, they admit that SLS was not operated as an entity to generate profit in 2014, did not pay wages to

---

[3] Plaintiffs do not oppose Defendant's argument that "the depreciation deduction is not properly deductible as a Schedule C business expense under Section 162 of the Internal Revenue Code." DE 46, 3 ("Nobody in this matter claims otherwise."). But "summary judgment, even when unopposed, can only be entered when 'appropriate.'" *United States v. One Piece of Real Prop. Located at 5800 S.W. 74th Ave., Miami, Fla.*, 363 F.3d 1099, 1101 (2004). Thus, the Court must "ensure that the motion itself is supported by evidentiary materials." *Ministerios El Camino v. Scottsdale Ins. Co.*, 587 F. Supp. 3d 1194, 1202 (S.D. Fla. 2022); *see also id.* (stating where summary judgment is unopposed, the "arguments therein are unrebutted, and the record evidence in support thereof is undisputed").

employees, and did not offer travel services to the public. *Id.* ¶¶ 3, 25.  SLS had no operating costs in 2014—the only expense associated with SLS is the depreciation loss for the private jet. *Id.* ¶ 25.  Plaintiffs did not attach any gross receipts or sales to the Schedule C to substantiate their claim for the deduction as a business loss. DE 40-6, 5–6.  SLS was not operated for the primary purpose of generating an income or profit.  Thus, Plaintiffs are not entitled to a deduction as a business loss as they originally sought through the Schedule C in their amended tax return.

2. **Plaintiffs' claim for a deduction as an unreimbursed partnership expense.**

Although Plaintiffs argue that they are entitled to the same $5,917,589 depreciation deduction as an unreimbursed partnership expense, the variance doctrine precludes the Court from considering this argument.  Accordingly, even if Plaintiffs are entitled to the deduction, the Court cannot grant summary judgment in their favor and must grant summary judgment in favor of Defendant.

    a) <u>The variance doctrine.</u>

As discussed above, a taxpayer cannot sue the United States for a tax refund until the taxpayer first files a claim with the IRS. 26 U.S.C. § 7422(a).  The taxpayer must do so "according to the provisions of law in that regard, and the regulations of the Secretary established in pursuance thereof." *Id.*  Among the applicable regulations is a requirement that a taxpayer

> [M]ust set forth in detail each ground upon which a credit or refund is claimed and facts sufficient to apprise the Commissioner of the exact basis thereof. The statement of the grounds and facts must be verified by a written declaration that it is made under the penalties of perjury. A claim which does not comply with this paragraph will not be considered for any purpose as a claim for refund or credit.

Treas. Reg. § 301.6402-2(b)(1); *Charter Co v. United States*, 971 F.2d 1576, 1579 (11th Cir. 1992); *see also Alabama By-Products Corp. v. Patterson*, 258 F.2d 829, 900 (5th Cir. 1958) ("All

grounds upon which a taxpayer relies must be stated in the original claim for refund so as to apprise the Commissioner of what to look into; the Commissioner can take the claim at its face value and examine only those points to which his attention is necessarily directed.").[4] Accordingly, "[s]ubsequent litigation of the government's denial of a refund claim is limited to the grounds fairly contained within the refund claim." *Charter*, 971 F.2d at 1579. Thus, a federal court "[has] no jurisdiction to entertain taxpayer allegations that impermissibly vary or augment the grounds originally specified by the taxpayer in the administrative refund claim." *Id.*; *cf. Mutual Assur., Inc. v. United States*, 56 F.3d 1353, 1356–57 (11th Cir. 1995) (allowing an amended claim for refund where a different amount was sought but asserted the same ground for relief as the original claim). The "[Eleventh Circuit] and its predecessor have steadfastly enforced this rule." *Id.* (collecting cases).

This principle is known as the "variance doctrine." *Hawco Equities, Inc. v. United States*, 2000 WL 1479076, *3 (S.D. Fla. Aug. 28, 2000). Its purpose is "to afford the IRS an opportunity to consider and dispose of a claim without the time and expense of litigation." *Id.*; *Cencast Servs., L.P. v. United States*, 94 Fed. Cl. 425, 440 (2010), *aff'd* 729 F.3d 1352 (Fed. Cir. 2013) ("[T]he IRS . . . cannot investigate every potential claim and, therefore, is justified in focusing on only those claims that the taxpayer actually raises as a ground for refund."). The law therefore requires a taxpayer "to do more than give the government a good lead based upon the government's ability to infer interconnectedness." *Charter*, 971 F.2d at 1579–80. And "[a]lthough crystal clarity and exact precision are not demanded [by the doctrine], at minimum the taxpayer must identify in its refund claim the 'essential requirements' of each and every refund demand." *Id.* at 1580. The

---

[4] Decisions of the former Fifth Circuit rendered prior to October 1, 1981, are binding precedent of the Eleventh Circuit. *Rubenstein v. United States*, 826 F. Supp. 448, 454 n.5 (S.D. Fla. 1993) (citing *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981)).

variance doctrine requires more than mere notice of a claim—"[t]he central inquiry . . . is whether the claim presented to the district court was previously submitted to the [IRS] in a manner that enabled an intelligent administrative review of the claim." *Perkins v. United States*, 464 F. Supp. 3d 519, 523 (W.D.N.Y. 2020) (second alteration in original) (internal quotation marks omitted)).

b) <u>Plaintiffs' claim impermissibly varies from those set out in the original return.</u>

Here, Plaintiffs' original claim for refund was limited to a depreciation deduction for a business loss sought through their Schedule C. *See* 40-6. The explanation for their amended return on their Form 1040X only stated that they "inadvertently neglected to claim a depreciation deduction for a business asset purchased and placed in service in 2014." *Id.* at 2. They only reported the $5,917,589 depreciation deduction on the Schedule C. *Id.* at 5–6. And, even though Plaintiffs included a Schedule E, as they did with their original return filed in 2015, they did not propose deducting the depreciation as an unreimbursed partnership expense. *Id.* at 7–8. This fact alone would have diverted the agent's attention from the possibility of seeking a deduction through the Schedule E since Plaintiffs explicitly included other unreimbursed partnership expenses but excluded the private jet's depreciation. Thus, given the original claim's presentation, the examining IRS agent was only apprised of Plaintiffs' desire to deduct the deprecation through a Schedule C.

As such, the agent considered that SLS did not generate profit or report any other expenses in 2014, nor did it offer travel services to the public and thus, the depreciation could not be deducted as a trade or business expense. At no other point during the administrative process did Plaintiffs claim the depreciation as an unreimbursed partnership expense. Mr. Ablamsky made an oral representation that such a deduction could be made and had been made in subsequent years only after the agent disallowed the deduction; Mr. Ablamsky never provided documentation for

the claim nor made the claim in writing. Plaintiffs' contention—that the depreciation deduction should be allowed through the Schedule E—was not "set forth in detail" sufficient to apprise the IRS of the basis for the deduction.

Still, Plaintiffs respond that the claim for an unreimbursed partnership expense does not impermissibly vary from their original return. Specifically, they argue that their refund suit "is for the same tax year, the same asset, involves the same depreciation calculation, and most crucially, results in exactly the same overpayment as described in Plaintiff's 2014 Form 1040X." DE 47, 9. None of those facts are disputed. However, case law suggests that such similarities are not sufficient to avoid preclusion by the variance doctrine because "the government is not required to be so prescient." *Charter*, 971 F.2d at 1579. Instead, circuit courts have repeatedly held that a refund claim must do more than merely notify the IRS of the deduction sought, but must identify the "essential requirements of each and every refund demand." *Id.* at 1580; *Sanders v. United States*, 740 F.2d 886, 890 (11th Cir. 1984) (holding a claim was precluded where plaintiff identified the relevant section of the tax code but did not allege the essential requirements in the original claim); *BCS Financial Corp. v. United States*, 118 F.3d 522, 525 (7th Cir. 1997) ("[T]o claim a refund for 1981 is not to claim a refund for 1984, even if the logic underlying the 1981 claim would suggest to a person knowledgeable about tax law and the affairs of the taxpayer that the taxpayer would also have a claim for 1984."); *Miller v. United States*, 949 F.2d 708, 712 (4th Cir. 1991) ([I]t is insufficient for a taxpayer to argue that the IRS possessed information from which it could deduce that the taxpayer is entitled to or desires a refund."); *Ottawa Silica Co. v. United States*, 699 F.2d 1124 ("[A] ground for a refund that is neither specifically raised by a timely claim for a refund, nor comprised within the general language of the claim, cannot be considered by a court in a subsequent suit for a refund.").

Thus, even though the deduction calculation would be the same, whether on Schedule C or Schedule E, the Court finds that insufficient to place the IRS on notice that Plaintiffs were seeking a deduction as an unreimbursed partnership expense. Entitlement to such a deduction requires that a taxpayer prove that "under a partnership agreement, [the] partner has been required to pay certain partnership expenses out of his own funds." *McLauchlan v. Comm'r*, 558 F. App'x 374, 377 (5th Cir. 2014). In other words, the IRS agent would have had to examine Mr. Shleifer's investment firm, his role in the firm, and the firm's policies regarding partnership expenses and reimbursements for travel. Plaintiffs would have had to substantiate the claim but some of the essential information was, admittedly, not documented and would have required a more in-depth examination by the IRS. *E.g.*, DE 38–1, Scott L. Shleifer Dep., 35:23–36:2, 37:11–13 ("I just knew that my agreement with my partners was that I would pay for all my private airplane travel, on my own."). The examining agent could not have been put on notice that Plaintiffs were seeking such a deduction when none of the essential elements for an unreimbursed partnership expense were alleged or substantiated during the administrative process. Indeed, Plaintiffs' "failure to allege precisely the basis of [their] [refund] claim [] resulted in [the] dispute . . . arising for the first time in this lawsuit." *Sanders*, 740 F.2d at 890. Exercising jurisdiction over the claim would, therefore, frustrate one of the purposes of the Treasury Regulation—"allowing the IRS to resolve disputes in the first instance without litigation." *Id.*

Plaintiffs further argue that the variance doctrine is not intended to preclude consideration of a claim simply due to a taxpayer's choice of form. DE 47, 10. But the IRS cannot investigate every potential claim and is, therefore, "justified in focusing on only those claims that the taxpayer actual raises as a ground for refund." *Cencast*, 94 Fed Cl. at 440. The IRS "is not required to act as a detective and to search for clues as to whether the plaintiff might desire tax refunds." *VDO-*

*ARGO Instruments, Inc. v. United States*, 3 Cl. Ct. 359, 362 (1983), *aff'd* 738 F.2d 453 (Fed.Cir.1984).  Moreover, "[i]t is not sufficient that the [IRS] has information somewhere in its possession from which it might deduce that the taxpayer is entitled to a refund, nor is it sufficient that a claim involving the same ground has been filed for another year or by a different taxpayer." *Gustin v. United States*, 876 F.2d 485, 488 (5th Cir. 1989).  Meaning, without claiming the depreciation deduction as an unreimbursed partnership expense, Defendant could not have been sufficiently apprised of the need to investigate or examine the claim and it was not required to do so on its own.

Plaintiffs make one more argument as to why their claim should not be precluded by the variance doctrine.  Specifically, they argue that the IRS agent was sufficiently notified that the deduction was intended to be included on a Schedule E instead of a Schedule C. DE 47, 10–11.  Mr. Ablamsky made oral requests to refile the 2014 Form 1040X and that he explained the deduction was obtained as an unreimbursed partnership expense in later return years. *Id.*  Defendant knew of this request and even noted that it might be deducted as suggested. DE 40-15, 2.  Mr. Ablamsky states, however, that the examining agent indicated that he was not going to allow the deduction, thus, Mr. Ablamsky offered no documentary substantiation as to the claim. DE 47, 11.  Plaintiffs argue that these discussions must be sufficient to put Defendant on notice of their claim and to avoid preclusion.  They further argue that Defendant cannot invoke the variance doctrine where the examining "agent simply declined to develop the issue further at the administrative stage." DE 50, 4.  Plaintiffs make much of an examining agent's duty to "determine all the facts supporting both sides of an issue" and to "refus[e] to take unfair advantage of mistakes or ignorance of citizens." *Id.* at 4.  Even assuming these facts as true, the claim is still precluded by the variance doctrine.

13

In *Hawco*, the United States moved to dismiss a refund suit initiated by a plaintiff. 2000 WL 1479076, at *2. The government argued that the grounds for the refund impermissibly varied from the claims set forth in their amended return. *Id.* The district court—within this judicial district—reviewed the plaintiff's first and second amended returns and found that the plaintiff did not assert the ground for refund in either. *Id.* at 4. Instead, the first return made no reference to the relevant claim and the second only referred to the claim as being applied in different tax years. *Id.* In fact, the plaintiff conceded that the claim was not expressly made in either of the returns but argued that "based on interactions between [the] [p]laintiff's representatives and IRS agents, the IRS was aware that [p]laintiff was seeking the alternative refund." *Id.* (internal quotation marks omitted). The interactions included communications in meetings and telephone conversations. *Id.* Still, the court could not accept the plaintiff's position as "[t]he law requires the taxpayer to do more than give the government a good lead based upon the government's ability to infer interconnectedness." *Id.* (quoting *Charter*, 971 F.2d at 1579–80) (alternation in original). It further found that the letters submitted to the United States were not sufficient to establish that it provided informal notice of its claim to the IRS. *Hawco*, 2000 WL 1479076, at *5. Accordingly, the court found that the claim for refund impermissibly varied from the original return and that it lacked jurisdiction over the claim. *Id.*

The same is true here. Plaintiffs' oral communications with the examining agent were not sufficient to put him on notice of a deduction in a Schedule E. Their claim was not included in the original return and Mr. Ablamsky's interactions with the agent could not alone allow him to sufficiently examine the claim. As discussed above, mere notice is insufficient to evade preclusion by the variance doctrine. Sufficient notice would require that Plaintiffs apprise Defendant of the essential requirements for the claim. The onus is on the taxpayer to provide the IRS with "more

than a good lead" and to substantiate the claim for the refund sought. In other words, the IRS is not tasked with "developing the issue" as Plaintiffs suggest. But Plaintiffs were required to present the facts that they purport the IRS had a duty to "determine." They did not do so. Consequently, the IRS agent could not evaluate the claim. Finally, to the extent that Plaintiffs argue that notice through an oral claim is sufficient, the Court disagrees. Generally, an "oral claim, even if it gives actual notice to an [IRS] employee that a refund is being filed, is not valid." *Vintilla v. United States*, 931 F.2d 1444, 1446 (11th Cir. 1991); *cf. Cencast*, 94 Fed. Cl. at 447 (holding a claim was precluded under the variance doctrine because "[t]here must . . . be some written component to the informal claim").

## IV. CONCLUSION

Plaintiffs contend that they are "not aware of why [the] deduction was listed specifically on Line 13 of Schedule C, but even if the use of Schedule C was mistaken as a matter of form, Plaintiffs nevertheless meet the substantive requirements for depreciation under the law." DE 40-16, 5. Whether that is true is not for this Court to decide. Although the mistake was costly and the result is harsh, the Court simply lacks jurisdiction to adjudicate the substantive requirements Plaintiffs advance now. Given that Plaintiffs' original amended return and their presentation of the issues during the administrative process did not "enable an intelligent administrative review of the claim" the IRS was not sufficiently apprised of the essential requirements for the claim. *Perkins*, 464 F. Supp. 3d at 523. Thus, Plaintiffs "also failed to satisfy the Treasury Regulation's requirement that [they] state the exact basis of [their] claim so that the [IRS] was not left to [its] own devices in order to discover the precise nature of [their] . . . claim." *Sanders*, 740 F.2d at 890. The Court, therefore, cannot consider the merits of Plaintiffs' claim for a depreciation deduction as an unreimbursed partnership expense. To do so would be to frustrate the purpose of the variance

15

doctrine and deprive from the IRS the opportunity to resolve disputes in the first instance without litigation. *Id.*

\* \* \*

Based on the foregoing, it is **ORDERED AND ADJUDGED** that Defendant's Motion for Summary Judgment [DE 41] is **GRANTED** and Plaintiffs' Motion for Summary Judgment [DE 36] is **DENIED**. The Defendant shall submit a proposed final judgment in Microsoft Word format within two business days of the date of rendition of this order at rosenberg@flsd.uscourts.gov. As no active claims remain in this case, the Clerk of the Court shall mark the case as **CLOSED**. All other pending motions are **DENIED AS MOOT** and all deadlines are terminated.

**DONE AND ORDERED** in Chambers, West Palm Beach, Florida, this 9th day of June, 2025.

_____
ROBIN L. ROSENBERG
UNITED STATES DISTRICT JUDGE